UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:18-CR-00179-DCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| RICHARD DAVID HALL, JR., | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Richard David Hall, Jr., proceeding *pro se*, has filed a Motion for Compassionate Release [Doc. 269]. Hall's partner, Celestia Black, has filed a letter in support of his motion [Doc. 271], and the United States has responded in opposition to the motion [Doc. 273]. This matter is now ripe for resolution. For the reasons stated below, Hall's motion [Doc. 269] is **DENIED**.

**I.    BACKGROUND**

Hall pleaded guilty to conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) on June 10, 2019 [Doc. 114], and the Court accepted his plea agreement on June 26, 2019 [Doc. 121]. Per the agreed factual basis in his plea agreement, Hall was a member of a drug trafficking organization [Doc. 95, ¶ 4]. In April 2016, Hall and a friend were transported to the hospital from a co-defendant's house for drug overdoses, and Hall's friend ultimately died as a result of his overdose [*Id.*]. A search of the residence revealed "16 grams of methamphetamine, a .45 caliber pistol, [a] firearm and over $15,000 in U.S. currency" [*Id.*]. In September 2016, a confidential source revealed Hall was supplying another co-

1

defendant with approximately three pounds of methamphetamine per week, witnessed on four occasions [*Id.*]. In November 2016, Hall supplied another individual with methamphetamine on eight to ten occasions [*Id.*]. In December 2016, a co-defendant stated Hall was his primary source of methamphetamine and that he had been purchasing from Hall for approximately one year [*Id.*].

In February 2017, a controlled purchase of approximately 3.5 grams of crystal methamphetamine was purchased from Hall at his residence, and agents subsequently executed a search warrant which revealed extensive text message communications between Hall and his methamphetamine source and distributors [*Id.*]. In November 2017, a co-defendant revealed Hall supplied him with six ounces of methamphetamine per week for three months [*Id.*]. Hall admitted that during the conspiracy, he was accountable for the distribution of at least 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine [*Id.*].

On September 20, 2019, this Court sentenced Hall to 235 months' imprisonment and 5 years' supervised release [Doc. 197]. In deciding Hall's sentence, the Court considered the factors set out in 18 U.S.C. § 3553(a), including his advisory sentencing guideline range of 235-293 months' imprisonment [Doc. 250, pg. 79]. Specifically, the Court emphasized Hall's continued distribution of methamphetamine following the overdose-related death of his close friend, noting that "the Court is concerned about that level of commitment to distributing methamphetamine" and explaining that "the Court has to deter that kind of behavior" [*Id.* at pg. 71, 79-80]. The Court also noted Hall was engaging in some of these criminal acts while on probation [*Id.* at pg. 80].

## II. STANDARD

"A district court may modify a defendant's sentence only as provided by statute." *United States v. Williams*, 607 F.3d 1123, 1125 (6th Cir. 2010) (quoting *United States v. Johnson*, 564 F.3d 419, 421 (6th Cir. 2009)). A district court has statutory authority under 18 U.S.C. § 3582, as

2

amended by the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), to modify a term of imprisonment upon a motion by the defendant directly with the Court, provided the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on his behalf. § 3582(c)(1)(A). Here, Hall has provided proof of the BOP's denial of his request for compassionate release [Doc. 269-1], and the United States does not dispute that Hall has exhausted his administrative remedies as required by § 3582(c)(1)(A). Therefore, the Court is permitted to consider Hall's motion.

The Court must first consider the § 3553(a) factors and may only reduce Hall's sentence if it finds both that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). The relevant policy statement in the present case is U.S.S.G. § 1B1.13, which provides that a district court may reduce a term of imprisonment if, after considering the § 3553(a) factors, the court determines that, as relevant here: (1) extraordinary and compelling reasons warrant the reduction; (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13.[1]

---

[1] While the policy statement only references motions filed by the Director of the BOP and has not been updated to reflect the First Step Act's amendment of § 3582(c)(1)(A), district courts have held this policy applies equally to motions filed by a defendant directly. *See, e.g.*, *United States v. Bolze*, --- F. Supp.3d ----, No. 3:09-CR-93-TAV-CCS-1, 2020 WL 2521273, at *6 n.9 (E.D. Tenn. May 13, 2020) ("[A]pplying the policy statement to motions filed by defendants, just as it applies § 1B1.13 to motions filed by the BOP, is proper absent any authoritative indication to the contrary."). Absent any controlling authority on the issue, this Court agrees with this line of cases as well as the United States [*see* Doc. 273, pg. 6 n.1] that § 1B1.13 applies here.

3

Case 2:18-cr-00179-DCLC-CRW   Document 280   Filed 08/27/20   Page 3 of 8   PageID #: 3120

## III.     ANALYSIS

### A.     Consideration of the § 3553(a) Factors

In addressing Hall's motion, the Court must first consider the § 3553(a) factors, which include, in relevant part:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a).  The United States argues granting Hall's motion would be inconsistent with these factors [Doc. 273, pg. 10-11], and the Court agrees.  Hall was sentenced merely ten months before filing his motion, and the Court's analysis of the above factors has not materially changed.  Significantly, the Court adds that approximately 90% of Hall's 235-month sentence remains unserved [*see* Doc. 55 (citing Hall's arrest date of January 4, 2019)].[2]  *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is

---

[2] While the Court recommended Hall receive credit for time served on Johnson County Criminal Court case number 2:16-cr-168 upon counsel for Defendant's request and no opposition from the United States [*see* Doc. 197, pg. 2; Doc. 250, pg. 42], nothing in the record indicates Hall served any jail time related to that conviction [*see* Doc. 178, ¶ 44; Doc. 179, pg. 3].

4

appropriate."). The Court finds that a substantial sentence reduction in the present case would not reflect the extreme seriousness of Hall's offense, would not promote respect for the law or afford adequate deterrence, and would not adequately protect the public from future crimes Hall might commit. *See* § 3553(a)(2). Therefore, the § 3553(a) factors weigh against granting Hall's requested relief.

**B.      Whether "Extraordinary and Compelling Reasons" Exist to Warrant a Reduction**

Hall bases his motion on the current COVID-19 pandemic, stating he has "several chronic health problems" that make him more susceptible both to contracting the virus and to dying from it and asserts that he is more likely to contract the virus in prison than at home [Doc. 269, pg. 1]. He further asserts he has no violent charges, has not been in any trouble in prison, has learned to obey the law, and that he will not be in trouble again [*Id.* at pg. 1-2]. Finally, he states his partner, Celestia Black, has diabetes and needs help taking care of their four grandchildren [*Id.* at pg. 2]. In her letter, Celestia Black echoes Hall's concerns regarding his health issues and asserts he would be safer at home [Doc. 271, pg. 1-2].

The Application Notes to U.S.S.G. § 1B1.13 provide guidance as to what reasons may be "extraordinary and compelling." Application Note 1(A) provides that a defendant's terminal medical condition may constitute an extraordinary and compelling reason, and a defendant's medical condition may otherwise constitute an extraordinary and compelling reason if he is "(I) suffering from a serious physical or medical condition; (II) suffering from a serious functional or cognitive impairment; or (III) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13.

Hall states he has contracted spinal meningitis twice and that he has chronic obstructive pulmonary disease (COPD), high blood pressure, diabetes, obesity, and neuropathy [Doc. 269,

5

pg. 1]. However, of these conditions, Hall's medical records only confirm he has Type 2 diabetes mellitus and hypertension [*see* Doc. 277]. Of these two conditions, the Centers for Disease Control and Prevention (CDC) recognizes that only Hall's diabetes renders him at an "increased risk for severe illness from COVID-19."[3] The United States concedes that "Hall has thus shown an extraordinary and compelling reason for release" [Doc. 273, pg. 10]. However, the Court's analysis of the remaining factors precludes Hall's immediate release. Further, while Hall might be at an increased risk from severe illness should he contract COVID-19, he has not established that he is in danger of contracting the virus. FCI Ashland, where Hall is imprisoned, has had five or fewer inmates who have tested positive for COVID-19, two inmates who have recovered from COVID-19, and one staff member who has recovered from COVID-19.[4]

Application Note 1(C) provides that the following family circumstances may constitute an extraordinary and compelling reason: "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children. (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13. While the Court is sympathetic to Hall's partner's diabetes diagnosis and her role in caring for their four grandchildren, these circumstances do not fall into either of these categories and therefore do not constitute an extraordinary and compelling reason for Hall's immediate release. Finally, Application Note 3 provides that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling

---

[3] *People at Increased Risk: People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 27, 2020).

[4] The BOP's website reports two different numbers for FCI Ashland inmates who have tested positive for COVID-19. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 27, 2020).

6

reason for purposes of this policy statement." U.S.S.G. § 1B1.13. The Court certainly appreciates Hall's statements that he has learned to obey the law and that he will not be in trouble again, and the Court has considered his post-conviction conduct in making this decision, but his alleged rehabilitation does not constitute an extraordinary and compelling reason for his immediate release.

C.     **Whether Hall is a Danger to the Safety of Any Other Person or to the Community**

The Court also must address whether Hall is a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13. Section 3142(g) instructs the Court to consider the following factors, in relevant part:

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involve[d] . . . a controlled substance [or] firearm . . .;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (B) whether, at the time of the current offense or arrest, the person was on probation . . . ; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

Hall's offense involved both a controlled substance and firearms. In fact, Hall received a two-level enhancement for maintaining "a premises for the purpose of manufacturing or distributing a controlled substance" pursuant to U.S.S.G. § 2D1.1(b)(12) and a separate two-level enhancement for possessing a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1) [Doc. 178, ¶¶ 25-26; Doc. 250, pg. 55-59]. Further, Hall committed some of these criminal acts while on probation [*see* Doc. 178, ¶¶ 43-45]. In addition, Hall's close friend died from an overdose, and

7

Hall himself almost died from an overdose, yet Hall continued to engage in the distribution of methamphetamine [*see id.* at ¶¶ 8-19]. Considering these factors, the Court finds Hall has not established he would not be a danger if released.

**D.      Whether a Reduction is Consistent with the Policy Statement**

While Hall has arguably shown an extraordinary and compelling reason for his release due to his Type 2 diabetes in light of the current COVID-19 pandemic, Hall has not shown that the § 3553(a) factors warrant a reduction in his sentence or that he would not be a danger to the public if released. Therefore, a reduction in his sentence would be inconsistent with U.S.S.G. § 1B1.13.

**IV.     CONCLUSION**

While the Court is sympathetic to Hall's concerns, he is not entitled to immediate release under § 3582(c)(1)(A). Therefore, his motion [Doc. 269] is **DENIED**.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge